Billy Taylor, Plaintiff (Pro Se)
P.O. Box 7343
Phoenix, Arizona 85011
Ph: 480 200 7888
billyt2@cox.net

_____ FILED       _____ LODGED
_____ RECEIVED    _____ COPY

JUN 0 3 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M  DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Billy Taylor
Plaintiff

        v.

AFS Technologies, Inc,
(AKA: Advanced Food Systems, Inc);
Kurien Jacob (Individually) and
Prasanna Jacob (Wife);
Walter Barandarian (Individually) and
Jane Doe Barandiaran; Kim Curtis,
AKA: Kimberly Curtis (Individually) and
John Doe Curtis ;Rebecca Barr
(Individually) and Jason Barr IV
(Husband); Andi Romano, AKA:
Andryle Romano (Individually) and John
Doe Romano; The Argentum Group

Defendants

**No. CV 09 2567 PHX DGC**

**PLAINTIFFS FIRST AMENDED
COMPLAINT.**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

COMES NOW Billy Taylor, Plaintiff in the above-styled civil action, and files his

complaint for Damages, showing this Court as follows:

## INTRODUCTION

1   Plaintiff brings this instant lawsuit pursuant to the Civil Rights Act of 1964, as

2   amended by the Civil Rights of 1991, 42 U.S.C. § 2000e et. Seq and 42 U.S.C. § 1981,

3   et seq. This Court also has jurisdiction under the laws of the United States pursuant to

4
5   28 U.S.C. § 1131. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)

6   because AFS Technologies, Inc, AKA: Advanced Food Systems, Inc, (hereafter referred

7   to as "AFS") does business in this District and maintains its principal place of

8   business/national headquarters in Phoenix, AZ.

9                                    PARTIES

10                                      1.
11
12   Plaintiff is an African- American citizen who is and has been at all relevant times

13   hereto, a resident of the State of Arizona.

14                                      2.

15   Defendant is a corporation doing business in the State of Arizona. Defendant

16   can be served with process by delivering a copy of the Summons and Complaint to the
17
     following agent:  INCORP SERVICES INC, 2338 W. ROYAL PALM RD, STE J,
18
19   PHOENIX, AZ  85021-9339.

20                                      4.

21                                 JURISDICTION

22   Jurisdiction is conferred upon this Court by 42 U.S.C. § 2000e, et seq. and 28
23
     U.S.C. § and 1331, 1367 and 1343. Venue is proper in this Court.
24
25                                      5.

26   Plaintiff has filed a charge of discrimination with the Equal Employment

27   Opportunity Commission (hereinafter "EEOC"). Plaintiff has requested and received a

28

1  Notice of Right to Sue Letter, a copy of which is attached as Exh.1. Therefore, Plaintiff

2  has exhausted his administrative remedies. The instant action is timely.

3                                          FACTS

4                                            6.

5

6       On or about June 2, 2008, Plaintiff Billy Taylor, hereafter referred to as "Taylor"

7  was hired by defendants to perform the duties of a Collection Specialist.  Taylor was

8  interviewed and hired by Tim McCrae, Former Chief Financial Officer.

9                                            7.

10

11      In July 2008 or August 2008, Taylor was promoted by Tim McCrae to perform

12  the duties of a Credit Manager. The promotion came with no base salary increase. It is

13  Taylor's genuine belief that when white employees are promoted they are given salary

14  increases.

15                                           8.

16
   **Taylor's first discrimination complaint**
17

18      On or about Friday, February 27th, 2009, Taylor had a discussion with Frank

19  Recht, Vice President of Professional Services/Implementation, (hereafter referred to as

20  "Recht") regarding the fact that Recht had not contacted Pocono Produce. It is common

21  knowledge at AFS that Recht has the propensity not contact to customers timely which

22  negatively impacts Taylor's ability to liquidate invoices.

23
                                             9.
24

25      On Monday, March 2, 2009, Taylor was contacted by Andi Romano, (hereafter

26  referred to as "Romano"), AFS Human Resources Manager and asked to come to her

27  office. When Taylor arrived, Rebecca Barr (hereafter referred to as "Barr"), AFS's

28

                                           - 3 -

1   Controller and Taylor's direct manager was present. Romano advised Taylor that he

2   was being called to her office because of his alleged incident with Recht on February

3   27, 2009. <u>Realizing that it would be a conflict of interest for Romano to investigate any</u>

4   <u>complaint's or issues regarding Recht because she dates him.</u> Taylor requested that

5   Romano have Kim Curtis, (hereafter referred to as "Curtis"), AFS Vice President of

6   Finance, and manager of Rebecca Barr and Romano to replace her in the meeting.

7   Romano complied with Taylor's request.

8

9                                                  10.

10      Within minutes Curtis arrived in Romano's office. Curtis and Barr advised Taylor

11  that he was being given an employee "Disciplinary Action" because of his alleged abrupt

12  language with Recht. Taylor was stunned by their actions given the fact that such a

13  corrective action was unprecedented based on employee disagreements with "Recht".

14  White employees have had disagreements with Recht and have not received a

15  corrective action. It is Taylor's belief that he was given a corrective action to "put him in

16  his place" based on his race. Curtis refused to release a copy of Taylor's "Disciplinary

17

18  Action" to him.

19

20                                                 11.

21      On Wednesday, March 4, 2009, Taylor met with Curtis and Kurien Jacob,

22  (hereafter referred to as "Jacob"), AFS President and Chief Executive Officer. Curtis

23  was clearly irritated in the meeting and left the meeting shortly after it began. Jacob

24  advised Taylor that the corrective action would be removed from his employee file and

25  in his opinion there was no discrimination at AFS. In fact, Jacob even advised Taylor

26

27  that he reported to Walter Barandiaran and that Argentum Group was the "Supreme

28

Authority" over operations at AFS, and if Taylor was unhappy with him, he could contact Argentum Group or Walter Barandiaran. There was no investigation into Taylor's race discrimination complaint or the fact that Jacob has referred to Taylor as "boy" throughout his employment, even after Taylor made Jacob aware that making a reference to him as a "boy" incensed him and was a denigrating and a racist term to use towards African-Americans. Taylor also shared his concerns with Romano. Jacob has never denied referring to Taylor as "boy."

12.

On or about August 27, 2009, Taylor was given a performance review by Barr. Despite a satisfactory review, Taylor did not receive a salary increase. It is Taylor's genuine belief that white or non-African-American employees did receive salary increases after receiving satisfactory reviews.

13.

Throughout Taylor's career, he has earned his quarterly bonus. However, Taylor was not paid his Quarter 1 bonus despite the fact that he earned it. In fact, Barr waited until Friday, October 30th, 2009 (a month after Quarter 1 closed) to advise Taylor that he was not going to be paid his bonus.

14.

Taylor expressed the fact that he disagreed with Barr's assessment that he did not earn his bonus check during Quarter 1.

15.

Barr responded to Taylor by referring to a defunct and moot bonus agreement that Taylor signed.

1

16.

2

3

Realizing that he could not have missed his bonus by $650,000, Taylor

performed his own "gap analysis" and identified more than $1,000,000 in invoicing that

4

5

was fraudulently billed from March 2009 to August 2009. Taylor emailed the results of

6

his analysis to Barr and Curtis on November 5, 2009, along with an explanation of why

7

he did in fact earn his bonus. On Friday, November 6, 2009 at 1:46 PM, Taylor sent

8

Jacob an email expressing his disdain about the fact that his bonus issue had not been

9

addressed.

10

11

Taylor furthered asked for Jacob's assistance to resolve the matter. On

November 6, 2009 at 2:38 PM, Taylor received an email from Curtis, stating she would

12

13

review Taylor's concerns when she had a "chance". Curtis was dismissive of Taylor and

14

*never* spoke with Taylor regarding his concerns. On Friday, November 6, 2009 at 3:17

15

PM, Taylor sent Curtis an email expressing concern about her lackadaisical behavior.

16

17.

17

18

On or about November 10, 2009, Taylor received an email from Barr

mischaracterizing a conversation she had with Taylor regarding Sherwood Farms. Barr

19

20

accused Taylor of lying based on third party information. If Barr was interested in

21

obtaining Taylor's part of the story, she could have walked into Taylor's cubicle which is

22

located next to her office. Taylor advised Barr that he believed her email sent on

23

24

November 10, 2009 was retaliatory and copied Curtis and Romano. Taylor was not

25

contacted by Curtis or Romano regarding why he believed Barr's email was retaliatory.

26

27

18.

28

- 6 -

**Second complaint of discrimination**

Realizing that the foregoing was occurring because of Taylor's race and for retaliatory reasons because Taylor complained of race discrimination in March of 2009. Taylor filed another documented complaint of race discrimination in emails dated on November 11th and 12th of 2009. Jacob immediately retaliated against Taylor **9 minutes** later by sending him a threatening email. Jacob said the following:

Billy

Disagreement about your bonus does not relate to your race.
We all have other issues to address and I did not see any pressing
need to address your unilateral views as a matter of urgency as
Rebecca did respond to you and her response was timely.

If you feel you have a race related complaint, I suggest you
document what constitutes a racial issue as so far all I have seen is
your views on the incentive issue. Without documenting what racial issues
you are dealing with we cannot address any of your claims. Be specific and
I will address it.

**If however you make unsubstantiated claims about race, we will have to
deal with it as disruptive behavior and deal with it accordingly. We have
multiple races working in harmony at AFS so I am totally at a loss as to
what your concern is.**

Kurien Jacob
CEO
AFS Technologies
kurienj@afsi.com
602 443 4222

<u>19.</u>

On or about November 11, 2009, Taylor emailed a letter of discrimination, a copy of his bonus research, and a copy of the defunct AFS bonus plan to Walter H.Barandiaran, Chairman of AFS Technologies, Managing Partner and Founder of Argentum Group and Jacobs direct superior.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>20.</u>

On November 12, 2009, Taylor wrote an "amended letter" of race discrimination and emailed it to Barandiaran, Argentum Group and Jacob. Taylor asked that Jacob and Barandiaran reference the same attachments as outlined in Taylor's November 11th, 2009 email.

<u>21.</u>

On November 12, 2009, Taylor received an email from Jacob stating that he was conducting an internal inquiry "based on advise he received".

<u>22.</u>

Taylor requested that Jacob identify who AFS was consulting with and what internal resources would be used. Jacob responded by stating he would let Taylor know when the investigation is complete. He further stated that <u>Argentum Group would not get involved</u> despite the fact that Jacob reports to Argentum Group and Barandiaran.

<u>21.</u>

On Thursday, November 12, 2009, Taylor sent Jacob and Curtis an email advising them of Barr's retaliatory behavior. Taylor advised Jacob and Curtis that he does not want to give the impression that he is not willing to perform.

<u>22.</u>

On Thursday, November 12, 2009 at 5:19 PM, Taylor sent Barandiaran, Chairman of AFS Technologies and Managing Partner of Argentum Group an email asking him if it was true that Argentum Group would not address his concerns of discrimination. Barandiaran responded by stating that Jacob is the CEO, and would address Taylor's concerns. Barandiaran made it clear that he and Argentum Group was

1  ratifying and condoning the discriminatory behavior of Jacob, by referring Taylor back to

2  the same person that was discriminating against him.

3  23.

4  On November 13, 2009 at 12:20 PM, Taylor received an email from Jacob stating

5  that he Taylor would report directly to him. Jacob copied Jim Gaspar, Vice President of

6  Marketing (hereafter referred to as "Gaspar"). Jacob insinuated that Taylor would not

7  fulfill his work requirements. Jacob was again exercising his power over Taylor by

8  making Taylor report to him despite the fact that Taylor had complained of

9  discrimination against him. Moreover, Taylor's work requirements were **never** tabled as

10  an issue prior to Taylor complaining of discrimination.

11
12
13  24.

14  As of November 13, 2009, Taylor had still not heard from anyone regarding

15  payment of his bonus. Jacob proffered that it appeared that Taylor did qualify for his

16  bonus. Taylor advised Jacob that the bonus program that he was viewing is moot and

17  therefore not before him. Jacob replied by stating that he would review all issues

18
19  objectively.

20  25.

21  On November 13, 2009 at 2:47 PM, Taylor received an email from Gaspar

22  stating that AFS is committed to providing an environment free of discrimination and

23  that he would be conducting interviews[1]. Gaspar copied Jacob, Curtis, Romano, Barr,

24
25  and Recht. Gaspar and Jacob also advised Barr, Curtis, Romano and Recht, not to

26
27  [1] AFS Technologies is not committed to providing a discrimination free environment. AFS
has never trained its employees or managers about Federal and State Laws that govern
discrimination. In fact, AFS did not even have an employee handbook until September

28  of 2008.

speak to Taylor, verbally or in writing. Gaspar is the Vice President of Marketing at AFS (Sales Manager), he reports directly to Jacob. He does not work in the Human Resources Department of AFS. Jacob notified Gasper and Recht that Taylor had complained of discrimination to paint Taylor as a problem employee. Gaspar heads the Marketing Department and Recht heads the Implementation/Professional Services Department. Jacob ensured that Taylor could not transfer to either department in the future because he has painted Taylor as a problem based on his discrimination complaint. There was absolutely no reason to notify Gaspar or Recht that Taylor filed a discrimination complaint. Taylor has never filed a complaint of discrimination against Gaspar or Recht.  AFS violated its own "confidentiality policy" by advising employees that were not employed in the Human Resources Department or targets of Taylors discrimination complaint the he complained of discrimination.

26.

On Tuesday, November 17, 2009, Taylor provided Gaspar a copy of his "Bonus Gap Analysis".

27.

On Tuesday, November 17, 2009, Taylor met with Gaspar regarding his complaint of discrimination. The meeting was a complete "sham" and all Gaspar did during the meeting was advise Taylor that he was a victim of lack of structure at AFS, not discrimination.

28.

Gaspar's findings were anything but objective, in fact Taylor was not even given an opportunity to rebut his findings. Accordingly, there has been no investigation into

- 10 -

Taylor's claims. Moreover, Jacob was present in each interview that Gaspar had with Recht, Romano, Barr, and Curtis. Jacob wanted to ensure that each said what they were trained or coached to say by him. It is apparent that the triumvirate of Curtis, Barr and Romano will do <u>whatever</u> Jacob, Barandiaran and Argentum Group orders them to do; regardless of whether or not such orders are immoral, illegal (in violation of title vii and section 1981 laws) or inconsistent with AFS policies.

29.

On November 19, 2009 at 10:28 AM, Taylor received an email from Jacob stating he wanted to meet with him at 2:30. The meeting time was later changed to 4:00 PM.

30.

On November 19, 2009, Taylor met with Jacob, Barr, Romano and Gaspar (via speaker phone) in Jacob's office. Realizing that the meeting was nothing more than window dressing. Taylor excused himself from the meeting. Jacob and Barr attempted to state that Taylor did not earn his bonus with no support for their claim. Jacob, Barr, Curtis and Romano submitted a bogus and fraudulent quarter 1 bonus analysis to Taylor in attempt to convince Taylor that he did not earn his bonus.

31.

Taylor sent an email to Romano, Curtis, Jacob, Barr and Gaspar requesting that Barr quantify her analysis that **$1,275, 611** was collectable during the months of March-August of 2009. Taylor further wanted an explanation as to the newly added equations with respect to his bonus structure.  Jacob responded by telling Taylor not to contact Gaspar and Romano again. This was after he told Taylor to contact Romano or Gaspar if he had questions. Jacob further advised Romano, Barr, Gaspar and Curtis not to

- 11 -

respond to Taylor again regarding his bonus. Taylor responded by asking Jacob to have Barr quantify her collection analysis. Jacob angrily refused to have Barr quantify her findings because she cannot; her analysis was "bogus" and a brazen lie all along. Jacob angrily accused Taylor of creating a difficult work environment because Taylor caught him in his web of deception regarding his bonus check .He stated that Taylor was wasting their time. Obviously using AFS's Conflict Resolution and Open Door policy program was a waste of Taylor's time.

<u>32.</u>

On November 19, 2009, Taylor received an email from Jacob accusing him of raising his voice. Jacob also states that Romano will go over Taylor's job description. Taylor's job description was not a concern until Taylor complained of discrimination.

<u>33.</u>

Taylor received an email from Barr regarding Legacy Seafood and Sherwood Farms. Barr had not shown any recent concerns for either of these customers prior to Taylor filing his discrimination complaint. Barr is now micromanaging Taylor in retaliation for complaining of discrimination.

<u>34.</u>

Taylor responded to Barr by advising her of the substantive issues that are affecting collections; issues that she has taken absolutely no steps to correct.

<u>35.</u>

On Friday, November 20, 2009 at 6:30 PM, Barr sent Taylor an email regarding leaving early. However, Taylor worked through lunch, which is not uncommon and decided to leave at 5:07 PM. As a manager, Taylor works more than 8 hours per day

1 sometime. Moreover, Taylor has never been questioned about what time he leaves the

2 office in the history of his employment with AFS. (18 months). Finally, such harassment

3 began after Taylor filed his complaint of discrimination on November 11, 2009. Barr's

4

5 concerns were masked as legitimate. However, actions were retaliatory based on

6 Taylor's complaints of discrimination.

7               <u>36.</u>

8   On Friday, November 20, 2009 at 3:24 PM, Taylor received an email from Barr

9 regarding a customer by the name of Legacy not being called since August. Barr has

10

11 been aware for months that this customer would remain on credit hold until they paid

12 their balance. She was also aware that further collection efforts would not be exhausted.

13 Barr's email was sent to harass Taylor and imply that he was not performing his job.

14 Taylor responded to Barr's email by outlining some of the "real" issues" that he faced in

15 the collection department. Barr responded by dismissing Taylor's response regarding

16

17 the colossal real issues facing the collection department and instead decided to attack

18 Taylor about an issue of much less importance that she already had the answer to. Barr

19 was again retaliating against Taylor because he filed a complaint of race discrimination.

20               <u>37.</u>

21   Barr's sudden attacks on Taylor's work ethic are particularly specious because

22 she never questioned Taylor's work ethic prior to his discrimination complaint. In fact,

23

24 she gave Taylor a respectable performance review and thanked him for his hard work.

25               <u>38.</u>

26   Taylor has always performed at a high level and was in the process of helping

27 AFS design a more effective collection system.

28

1

39.

2

3

On November 24, 2009 at 5:06 PM, Taylor received an email from Barr stating

that she was providing Taylor with a copy of his job description. Taylor's job description

4

5

has **never** been a concern during 18 months of employment. Moreover, non-African -

6

American employees in the Finance Department were not provided job descriptions with

7

"additional job requirements" that also included a more stringent focus on their job

8

duties. This was clearly a retaliatory discrimination maneuver by Barr, Romano, Curtis

9

Jacob, Barandiaran and Argentum Group masked as a legitimate business concern.

10

40.

11

12

On Wednesday, November 24, 2009 at 5:20PM, Taylor sent Barr an email asking

13

for clarity regarding 10 calls per day. Barr responded by asking for information that she

14

already is privy to each day. Her request was nothing than a ploy to needlessly increase

15

Taylor's workload in retaliation for Taylor's race discrimnation complaint. Taylor was

16

already producing a weekly report to Barr.

17

18

19

20

41.

21

On Wednesday, November 25, 2009, Taylor emailed Barr the weekly collection

22

update outlining 10 accounts of concern.

23

42.

24

25

On Wednesday, November 25, 2009, Barr emailed Taylor and asked if he was

26

coming for the collection meeting which was normally conducted in her office each week

27

prior to Taylor's complaint of discrimination on November 11, 2009. In an effort to

28

- 14 -

safeguard himself from misunderstandings regarding Barr, Taylor agreed to meet with Barr only if a third party was present other than Jacob or Curtis. Taylor was not required to meet with Barr in person at all per Jacob, but was willing to do so with a third party other than Jacob or Curtis present. Barr was under instructions from Jacob to communicate with Taylor in writing to avoid any misunderstandings.

<u>43.</u>

On November 25, 2009, Taylor was approached by Romano, and was asked to meet with her and Barr in Barr's office. When Taylor was seated in Barr's office, Barr proceeded to read Taylor a "Disciplinary Action Notice" that outlined Taylor's alleged behavior that included a "stale" March 2, 2009 event that involved Taylor standing on a file cabinet (that Jacob had previously dismissed), a conclusory comment about Taylor raising his voice and walking out of a meeting when Barr and Jacob used fraudulent accounting practices to substantiate their reasoning for "cheating" Taylor out the Quarter 1 bonus check that he earned, a comment about Taylor stating that Barr was micromanaging him in retaliation ( which is Taylor's protected right of expression as an employee; instead of Romano investigating Taylor's retaliation complaint, AFS, Argentum Group, Romano, Barr, Curtis and Jacob retaliated against Taylor for complaining of retaliation and race discrimination. The Disciplinary Action was nothing more than a complete "sham" that was "brazenly" manufactured by AFS, Argentum Group, Romano, Barr, Curtis and Jacob in retaliation against Taylor for complaining of discrimination. AFS, Barr, Romano, Curtis Jacob, Barandiaran and Argentum Group wanted to send a message to Taylor that his complaint of discrimination would not deter them from retaliating against him.

## 44.

During the meeting in Barr's office on November 25 2009, Romano asked advised Taylor that if he did not meet with Barr his employment would be terminated. Taylor advised Romano of the email that Jacob sent advising Barr to communicate with Taylor in writing. Romano responded by stating that Jacob's email was related to Taylor's claims of discrimination. It was not. Taylor advised Romano that he would not meet with Barr privately because he did not trust her and because AFS has retaliated against him based on his complaints of discrimination (nothing was preventing Romano from sitting in on the meeting with Taylor and Barr). Romano then advised Taylor that his employment was being terminated. AFS, Argentum Group, Romano, Barr, Curtis and Jacob were obviously determined to terminate Taylor after his complaint of discrimination and retaliation.

## 45.

## **FIRST CAUSE OF ACTION**

## **Retaliation**

It is apparent that AFS, Argentum Group, Romano, Barr, Curtis and Jacob retaliated against Taylor after he complained of discrimination. To establish a prima facie case of retaliation, a plaintiff must demonstrate a protected activity, an adverse employment action, and a causal link between the protected activity and the adverse employment action. Cornwell v. Electra Cent.Credit Union, 439 F.3d 1018, 1034-35 (9th Cir. 2006) (citation omitted); Pardi v. Kaiser Found. Hospitals, 389 F.3d 840, 849 (9th Cir. 2004). An "adverse employment action" is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from

engaging in a protected activity." <u>Ray v. Henderson, 217 F.3d at 1244(citation omitted);</u>

<u>accord Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2415</u>

<u>(2006)</u>. Actions that materially affect compensation are adverse employment actions.

<u>Little v. Windermere Relocation, Inc., 301 F.3d 958, 970(9th Cir. 2002) (citations</u>

<u>omitted)</u>.

46.

Plaintiff incorporates Paragraphs 1 through 45 as set forth verbatim herein.

47.

Taylor was immediately retaliated against by AFS, Argentum Group, Romano, Barr,

Curtis and Jacob  after he complained of discrimination as indicated supra and infra:

a) Taylor received a threatening email from Jacob **19 minutes** after complaining of

discrimination stating that if he deemed Taylor's complaint of race discrimination

unsubstantiated, he would deem Taylor's behavior as disruptive and deal with

him accordingly.

b) Taylor's job duties were suddenly micromanaged by AFS, Argentum Group,

Romano, Barr, Curtis and Jacob

c) AFS, Argentum Group, Romano, Barr, Curtis and Jacob Provided Taylor with a

stringent job description while not providing white employees with the same after

Taylor complained of discrimination.

d) AFS, Argentum Group, Romano, Barr, Curtis and Jacob Refused to investigate

Taylor's complaint of discrimination. Gaspar's documented so-called bogus

investigation speaks for itself.

- 17 -

e) AFS, Argentum Group, Romano, Barr, Curtis and Jacob accused Taylor of leaving early when there has never been any issues of this nature during the course of Taylor's employment.

f) AFS, Argentum Group, Romano, Barr, Curtis and Jacob refused to pay Taylor the bonus check he earned, even after Taylor conducted his own "Gap Analysis that showed that AFS had billed over 1 million dollars in fraudulent billings.

g) Jacob and Argentum Group advised Romano, Gaspar, Curtis and Barr not to respond to Taylor's penetrating questions about his bonus.

h) AFS, Argentum Group, Romano, Curtis and Jacob refused to order Barr to substantiate her claim that Taylor did not earn a bonus by providing supporting detail for her claims. AFS, Argentum Group, Romano, Barr, Curtis and Jacob became even more determined not to pay Taylor his earned bonus check after he complained of discrimination.

i) AFS, Argentum Group, Romano, Barr, Curtis, Gaspar and Jacob isolated Taylor by informing employees not to speak to Taylor during AFS's so-called race discrimination investigation.

j) Jacob, Barr and Curtis quit speaking to Taylor when their paths crossed in the office.

k) Walter Barandarian, AFS Technologies Chairman and Argentum Group did nothing to protect Taylor from Jacob, Barr, Romano and Curtis's retaliatory raft after he complained of discrimination.

l) Jacob alerted senior management in other departments that Taylor complained of race discrimination. Thus coloring Taylor as a problem employee and

- 18 -

1    mitigating Taylor's ability to transfer to other business units or departments at

2    AFS.

3    m) Jacob accused Taylor of creating a hostile work environment.

4

5    n) Taylor's internal complaint of retaliation was never investigated by AFS,

6    Argentum Group, Romano, Barr, Curtis or Jacob.

7    o) Taylor was given a **DISCIPLINARY ACTION NOTICE 14 days** after complaining

8    of discrimination for the second time by AFS, Barr, Romano, Curtis, Jacob,

9    Barandiaran and Argentum Group.

10

11   p) Taylor was **terminated 14 days** after complaining about discrimination by AFS,

12   Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group.

13

14                                    <u>48.</u>

15                     **SECOND CAUSE OF ACTION**

16                         **Race Discrimination**

17

18                                    <u>49.</u>

19   Plaintiff incorporates Paragraphs 1 through 48 as set forth verbatim herein.

20                                    <u>50.</u>

21   Taylor was not given a base salary increase by AFS, Argentum Group, Romano,

22   Barr, Curtis or Jacob when he was promoted from Collection Specialist to Credit

23   Manager. White employees were given salary increases.

24

25

26

27

28

51.

Taylor was not given a salary increase by AFS, Argentum Group, Romano, Barr, Curtis or Jacob after receiving a respectable performance review. White employees were given salary increases.

52.

Taylor was given a corrective action by AFS, Argentum Group, Romano, Barr, Curtis and Jacob after having a disagreement with Recht about his failure to timely contact customers. White employees have disagreements with Recht about customer issues but were not given a Disciplinary Action.

53.

Taylor's concerns regarding his bonus were ignored by AFS, Argentum Group, Romano, Barr, Curtis and Jacob because of his race. White employees concerns about the same are timely addressed.

54.

AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group's conduct as described herein was malicious and oppressive and done with a conscious disregard of Plaintiff's rights. The acts of AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group were performed with the knowledge of an employer's economic power over its employees. Defendants, through its officers, managing agents and/or supervisors, authorized condoned and ratified the unlawful conduct. Consequently, Plaintiff is entitled to punitive damages from Defendants'.[2]

---

[2] Jacob has a history of blatantly disregarding the rights of employees and creating a hostile work environment for those that oppose him by standing up for their protected rights. It is well known throughout AFS that any employee who gets in the path of Jacob

55.

Plaintiff is informed and believes that in addition to the practices enumerated supra, AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group may have engaged in other discriminatory practices against him which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will seek leave of the Court to amend this Complaint to include such practices.

56.

As a direct and proximate result of AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group's willful, knowing and intentional discrimination and retaliation against him, Plaintiff has suffered severe mental anguish and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

57.

Plaintiff alleges that the outrageous conduct of AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group described above, was done with oppression and malice; with a conscious disregard for his rights; and with the intent, design and purpose of injuring him. Plaintiff is further informed and believes that defendants through its officers, managing agents and/or its supervisors, authorized condoned and/or ratified the unlawful conduct. By reason thereof, Plaintiff is entitled to punitive damages from Defendants'.

58.

will be berated, derided, and even terminated if they do not succumb to his abusive behavior. This will become apparent throughout discovery in this case.

As a direct and proximate result of AFS, Barr, Romano, Curtis, Jacob, Barandiaran and Argentum Group violation of existing law, as described, Plaintiff will be compelled to retain the services of counsel and will incur legal fees and cost, the full nature and extent which are presently unknown. Plaintiff will therefore seek the leave of the Court to amend this Complaint in that regard when the same shall be fully and finally ascertained.

<u>59.</u>

WHEREFORE, Plaintiff prays as follows:

(a) That Plaintiff be awarded back pay and lost wages, as well as compensatory and punitive damages against the Defendants under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §§1981,et seq.  In the amount to be determined by a jury;

(b) That this court enjoin the Defendants' from discriminating on the basis of race in the hiring, retention, promotion and representation of its employees, including the Plaintiff.

(c) That Plaintiff be awarded the cost and expenses of litigation, including reasonable attorney's fees;

(d) For a trial by jury as provided by law;

(e) For any and all other further relief the court may deem necessary just and proper.

This 2nd day of June, 2010.

Respectfully Submitted,

_____
Billy Taylor (Pro Se)

1

## CERTIFICATE OF SERVICE

I hereby certify that on June 2nd , 2010, a copy of the attached document

was mailed to defendants counsel via U.S. Mail  at the below address:

Joseph T. Clees, Esq
Alexis L. Pheiffer, Esq
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
602 778 3700

This 2nd  day of June  2010

Billy Taylor, Plaintiff (Pro Se)

# **<u>EXHIBIT 1</u>**

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

**To:** Billy E. Taylor
P.O. Box 7343
Phoenix, AZ 85011

**From:** Phoenix District Office
3300 North Central Ave
Suite 690
Phoenix, AZ 85012

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2010-00465 | David B. Rucker, Supervisory Investigator | (602) 640-5055 |

NOTICE TO THE PERSON AGGRIEVED:

*(See also the additional information enclosed with this form.)*

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)**

[ ]  More than 180 days have passed since the filing of this charge.

[X]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.** In this regard, the paragraph marked below applies to your case:

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the
Commission

*Rayford  Irvin*

Enclosures(s)

_____
Rayford O. Irvin,
Acting District Director

DEC 0 8 2009

*(Date Mailed)*

cc:  Attn: Legal Counsel
AFS TECHNOLOGIES
2141 East Highland Avenue, Suite 100
Phoenix, AZ 85016