1    **WO**

2

3

4

5               **IN THE UNITED STATES DISTRICT COURT**

6                    **FOR THE DISTRICT OF ARIZONA**

7

8    Billy Taylor,                                No. CV-09-2567-PHX-DGC
                          Plaintiff,

9                                                 **ORDER**
         vs.

10
     AFS Technologies, Inc.; Kurien Jacob;
11   Kimberly Curtis; Rebecca Barr; and Andi
     Romano,

12
                          Defendants.

13

14          Plaintiff Billy Taylor brought this employment law action by filing a pro se

15   complaint against a former employer, AFS Technologies, Inc. ("AFS"), and several

16   coworkers.  Doc. 1.  The amended complaint asserts race discrimination and retaliation

17   claims under Title VII and 42 U.S.C. § 1981.  Doc. 94.  Although Plaintiff is proceeding

18   pro se, he is not a novice at federal litigation.  He has filed more than a dozen suits in this

19   District alone, seven of which raised allegations similar to those raised in this case,

20   that is, race discrimination and retaliation on the part of an employer.[1]

21          Defendants have filed a motion for summary judgment.  Doc. 244.  The motion is

22   fully briefed.  Docs. 279, 285.  For reasons stated below, the motion will be granted.[2]

23   _____

24          [1] *See Taylor v. DriveTime Credit Corp.*, No. CV-03-1455-DGC (D. Ariz. July 30,
     2003); *Taylor v. CitiFinancial Mortg. Co.*, No. CV-04-2782-NVW (D. Ariz. Dec. 6,
25   2004); *Taylor v. Accounting & Fin. Prof'ls, Inc.*, CV-05-912-SMM (D. Ariz. Mar. 25,
     2005); *Taylor v. ER Solutions, Inc.*, No. CV-07-1000-SRB (D. Ariz. May 17, 2007);
26   *Taylor v. Horizon Distrib., Inc.*, CV-07-1984-DGC (D. Ariz. Oct. 15, 2007); *Taylor v.
     Action Barricade Co.*, No. CV-07-2013-GMS (D. Ariz. Oct. 17, 2007); *Taylor v. Global
27   Water Mgmt. LLC*, CV-08-1395-MHM (D. Ariz. July 29, 2008).

28          [2] Plaintiff's request for oral argument is denied because the issues have been fully
     briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);

1    **I.      Summary Judgment Standard.**

2          A principal purpose of summary judgment is "to isolate and dispose of factually

3    unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary

4    judgment is appropriate if the evidence, viewed in the light most favorable to the

5    nonmoving party, shows "that there is no genuine issue as to any material fact and that

6    the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Only

7    disputes over facts that might affect the outcome of the suit will preclude the entry of

8    summary judgment, and the disputed evidence must be "such that a reasonable jury could

9    return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

10   242, 248 (1986).

11   **II.     Discrimination Claims.**

12         Title VII prohibits an employer from discriminating against any individual with

13   respect to "compensation, terms, conditions, or privileges of employment, because of

14   such individual's race[.]"  42 U.S.C. § 2000e-2(a).  Under § 1981, all persons have the

15   right to "the full and equal benefit of all laws and proceedings for the security of persons

16   and property as is enjoyed by white citizens," including "the enjoyment of all benefits,

17   privileges, terms, and conditions of [a] contractual relationship," and those rights "are

18   protected against impairment by nongovernmental discrimination[.]"     42 U.S.C.

19   §1981(a)-(c).  The summary judgment framework set out in *McDonnell Douglas Corp. v.*

20   *Green*, 411 U.S. 792, 802 (1973), governs Plaintiff's Title VII claims and provides a

21   guide to the claims brought under § 1981. *See Tagupa v. Bd. of Directors*, 633 F.2d

22   1309, 1312 (9th Cir. 1980); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840,

23   850 (9th Cir. 2004).

24         Under that framework, Plaintiff must first make a prima facie case of race

25   discrimination by showing that he belongs to a protected class, that he was qualified for

26   his position, that he was subject to an adverse employment action, and that similarly

27   _____

28   *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    situated individuals outside his protected class were treated more favorably.  *See Chuang*

2    *v. Univ. of Cal. Davis*, 225 F.3d 115, 1123-24 (9th Cir. 2000) (citing *McDonnell*

3    *Douglas*, 411 U.S. at 802).  "[T]he burden of production – but not persuasion – then

4    shifts to the employer to articulate some legitimate, nondiscriminatory reason for the

5    challenged action."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir.

6    2002) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer meets that burden,

7    "then the *McDonnell Douglas* framework drops out of the picture entirely, and [P]laintiff

8    bears the full burden of persuading the factfinder that the employer intentionally

9    discriminated against him."  *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir.

10   2005) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (2005)).

11         AFS has articulated legitimate, nondiscriminatory reasons for each employment

12   action of which Plaintiff complains.  Doc. 244 at 4-8, 14-15.  Defendants argue, correctly,

13   that Plaintiff presents no evidence from which a jury reasonably could find that those

14   stated reasons are pretextual or that AFS otherwise acted with discriminatory intent.

15         AFS President Kurien Jacob allegedly referred to Plaintiff as "Billy boy" and

16   "boy" in March 2008 and early 2009 (Doc. 279 at 6), but those references, standing

17   alone, do not constitute direct evidence of discriminatory animus and are insufficient to

18   defeat summary judgment.  The Supreme Court has made clear that whether the term

19   "boy" is discriminatory depends on "various factors, including context, inflection, tone of

20   voice, local custom, and historical usage."  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456

21   (2006).  "It is the plaintiff's burden to provide evidence beyond his or her own subjective

22   assertions of discrimination suggesting that a facially neutral term or phrase was, in fact,

23   discriminatory."  *Robertson v. Dodaro*, --- F. Supp. 2d ----, 2011 WL 768111, at *7

24   (D.D.C. Mar. 7, 2011) (citing *Ash*, 546 U.S. at 456).

25         Plaintiff fails to address the relevant factors or otherwise explain why Jacob's use

26   of the term "boy" – which can have a benign meaning, *see Ash*, 546 U.S. at 456 – reflects

27   racial animus.  Moreover, because Jacob's use of the term "boy" was not tied directly to

28   Plaintiff's termination or any other adverse employment action, "it is weak evidence and

1    not enough to create an inference of [race] discrimination."  *Nidds v. Schindler Elevator*

2    *Corp.*, 113 F.3d 912, 919 (9th Cir. 1996); *see also Rose v. Wells Fargo & Co.*, 902 F.2d

3    1417, 1423 (9th Cir. 1990) (supervisor's reference to discharged employees as "part of an

4    old-boy network" insufficient to create inference of age discrimination).

5    　　　　Rebecca Barr is alleged to have falsely stated that Plaintiff did not receive a salary

6    increase because raises were not being given during most of his employment with AFS.

7    Doc. 279 at 8-10.  Defendants counter that Barr's statement is not false when considered

8    in context, and that Plaintiff has not otherwise shown that he was treated differently than

9    similarly situated employees.  Doc. 285 at 8-9.

10   　　　　A plaintiff may show discrimination through direct evidence of racial animus or

11   by presenting circumstantial evidence, that is, evidence showing the employer's proffered

12   explanation for the adverse action to be "unworthy of credence."  *Tex. Dep't of Cmty.*

13   *Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  The distinction between the two types of

14   evidence is crucial, as it "controls the amount of evidence that the plaintiff must present

15   in order to defeat the employer's motion for summary judgment."  *Coghlan*, 413 F.3d at

16   1095.  Where the plaintiff relies on circumstantial evidence, that evidence must be both

17   "specific and substantial" in order to create a triable issue as to whether the employer

18   intended to discriminate on the basis of race.  *See id.*; *Godwin v. Hunt Wesson, Inc.*, 150

19   F.3d 1217, 1221-22 (9th Cir. 1998).

20   　　　　Other than Barr's alleged false statement regarding raises and his own subjective

21   beliefs, Plaintiff presents no evidence – circumstantial or otherwise – suggesting that

22   AFS intentionally discriminated against him because of his race.  Plaintiff claims that the

23   individual Defendants found him difficult to work with (Doc. 279 at 14), but fails to

24   explain how this constitutes evidence of racial animus.  Plaintiff "believes" his failure to

25   receive a raise "occurred because of his race" (*id.* at 16), and asserts, without supporting

26   evidence, that AFS "never planned on paying [him] because of race" (*id.* at 15).  But a

27   plaintiff may not create a triable issue of discrimination (or retaliation) by "relying solely

28   on [his own] subjective belief[.]"  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d

1  1018, 1028 n.6 (9th Cir. 2006); *see Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.

2  1983) ("Steckl's mere assertions that Motorola had a discriminatory motivation and

3  intent in failing to promote him were inadequate, without substantial factual evidence, to

4  raise an issue precluding summary judgment.").  Although Plaintiff alleges that Barr lied

5  about the reason he did not receive a salary increase, he presents no direct evidence of

6  racial animus and no substantial and specific circumstantial evidence that the alleged lie

7  was racially motivated.

8        Because Plaintiff has presented no direct evidence of race discrimination and no

9  specific and substantial circumstantial evidence that Defendants' stated reasons for the

10  challenged employment actions were mere pretexts for race discrimination, he "has failed

11  to carry his burden at the third stage of the *McDonnell Douglas* framework."  *Aragon v.*

12  *Rep. Silver State Disposal, Inc.*, 292 F.3d 654, 664 (9th Cir. 2002).  The Court will grant

13  summary judgment on the discrimination claims brought under Title VII and § 1981.

14  Given this ruling, the Court need not address Defendants' argument that Plaintiff has

15  failed to establish a prima facie case of discrimination.  *See* Doc. 244 at 9-13.

16  **III.    Retaliation Claims.**

17        Title VII prohibits an employer from retaliating against an employee "because he

18  has opposed any practice made an unlawful employment practice" under the statute.

19  42 U.S.C. § 2000e-3(a).  Section 1981 similarly prohibits an employer from retaliating

20  against an employee for having complained about race discrimination.  *Manatt v. Bank of*

21  *Am., N.A.*, 339 F.3d 792, 800-01 (9th Cir. 2003).  Retaliation claims under Title VII and

22  § 1981 share identical legal standards, and are subject to the summary judgment burdens

23  set forth in *McDonnell Douglas*.  *See id.* at 801; *CBOS W., Inc. v. Humphries*, 553 U.S.

24  442, 455 (2008).  The plaintiff must first establish a prima facie case by showing a

25  protected activity, a materially adverse action, and a causal link between the two.  *See*

26  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Burlington N. &*

27  *Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006).  If the defendant provides

28  legitimate, non-retaliatory reasons for its actions, the plaintiff "bears the ultimate burden

1    of showing defendant's stated reasons to be merely pretextual[.]"  *Munoz v. Mabus*, 630

2    F.3d 856, 865 (9th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802-04).

3        On February 27, 2009, during a disagreement with coworker Frank Recht about a

4    client account, Plaintiff stood on a filing cabinet outside his cubicle and twice shouted

5    "Frank, I'm taking the high road!"  Docs. 245, 277 ¶¶ 41-42.  Believing the conduct to be

6    unprofessional, Barr met with Plaintiff on March 3, 2009, discussed his communication

7    style, and issued a written warning.  *Id.* ¶¶ 45.  The next day, Plaintiff sent an email to

8    Andi Romano complaining that the meeting was "nothing more than a pretext to put [me]

9    'in my place based on my race.'"  *Id.* ¶¶ 52.  Plaintiff complained of discrimination again

10   on November 11, 2009, in an email to Barr:  "Hello Rebecca, unfortunately your

11   anathema towards me because of my race has raised its 'ugly' head again."  *Id.* ¶¶ 96.

12   Plaintiff emailed a letter to President Kurien Jacob regarding the purported race

13   discrimination later the same day.  *Id.* ¶¶ 98.

14       Plaintiff claims that he suffered several adverse actions in retaliation for these

15   complaints of discrimination.  Among other things, Plaintiff claims he was denied a raise

16   and a bonus in August and October 2009, respectively, was given additional duties and a

17   disciplinary notice on November 24, 2009, and was terminated the next day.  Doc. 94 at

18   4-16.[3]

19       Defendants have provided legitimate, non-retaliatory reasons for each of these

20   actions.  With respect to the August 2009 performance evaluations, no one who reported

21   directly to Barr was given a raise.  Doc. 244 at 10-11.  Plaintiff did not receive a bonus in

22   October 2009 because he failed to meet his performance goals.  *Id.* at 11-13.  Plaintiff,

23   like other employees in the finance department, received additional duties because AFS

24   was focusing on outstanding balances due the company.  *Id.* at 22.  He was given a

25   disciplinary notice and ultimately terminated for refusing to attend a mandatory meeting

26

27        [3] The Court agrees with Defendant (Doc. 244 at 19-20) that micromanagement,
28   ostracism by coworkers, and the failure to investigate (*see* Doc. 94 at 17-18) do not
     constitute materially adverse actions sufficient to support a retaliation claim.

1    with Barr despite direct orders to do so.  *Id.* at 12; *see also id.* at 13-14.  Defendants argue

2    that Plaintiff has presented no evidence from which a jury reasonably could find that

3    these reasons were a mere pretext for race discrimination, or a causal link between the

4    complaints and the alleged adverse actions.  *Id.* at 21-22.  The Court agrees.

5            Shortly after Plaintiff complained for a second time about perceived

6    discrimination on November 11, 2009, Jacob sent him an email stating that if he were to

7    "make unsubstantiated claims about race, we will have to deal with it as disruptive

8    behavior and deal with it accordingly."  Doc. 277 ¶ 315.  Plaintiff asserts that this

9    "threatening letter alone constitutes direct evidence of retaliatory motive."  Doc. 1279

10   at 17.   But warning an employee not to make *unsubstantiated* claims of race

11   discrimination does not constitute retaliation.  Moreover, Jacob made clear that specific

12   instances of documented discrimination would be addressed, and that he was "totally at a

13   loss" as to the nature of Plaintiff's concerns given that there were "multiple races

14   working in harmony at AFS[.]"  Doc. 277 ¶ 315, Ex. 94.  Jacob's email does not

15   constitute evidence, direct or circumstantial, of a retaliatory motive.

16           Plaintiff similarly asserts that the disciplinary notice he received for having

17   complained about discrimination constitutes direct evidence of discrimination.  Doc. 279

18   at 20.   But the notice was explicitly based on the conclusion reached, following an

19   investigation, that Plaintiff was "not the victim of discrimination and that all actions

20   taken with respect to [his] job were performance or behavior based."  Doc. 277 ¶ 403,

21   Ex. 201.   Again, warning an employee about making false accusations of race

22   discrimination is not evidence of a retaliatory motive.  Plaintiff cites no legal authority to

23   the contrary.

24           Plaintiff contends that the timing of the disciplinary notice and termination,

25   standing alone, is sufficient evidence of pretext.  Doc. 279 at 22, 27.  "In some cases,

26   temporal proximity can by itself constitute sufficient circumstantial evidence of

27   retaliation for purpose of both the prima facie case and the showing of pretext."  *Dawson*

28   *v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).  This is not one of those cases.

1    Plaintiff first complained about race discrimination in early March 2009.   He

2  experienced no alleged adverse action until five months later, when he was denied a raise

3  in late August 2009.   To defeat summary judgment, the temporal proximity between

4  protected activity and adverse actions must be "very close."   *Clark County Sch. Dist. v.*

5  *Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases finding three and four-month periods

6  too long); *see Villiarimo*, 281 F.3d at 1065 ("timing alone will not show causation in all

7  cases; rather, in order to support an inference of retaliatory motive, the [adverse action]

8  must have occurred fairly soon after the employee's protected expression").

9    While Plaintiff experienced adverse actions shortly after repeating his accusations

10  of discrimination in November 2009, this timing is also insufficient to create a triable

11  issue of causation or pretext.   Defendants took no immediate adverse action against

12  Plaintiff after he complained about discrimination in March 2009.   The first alleged

13  adverse action happened more than five months later, undermining the inference of

14  retaliatory motive arising from the close proximity between the complaints made on

15  November 11, 2009 and subsequent adverse actions.   Moreover, as explained more fully

16  above, Defendants have provided legitimate, non-retaliatory reasons for each adverse

17  action taken after the November 11 complaints, and Plaintiff presents no specific and

18  substantial evidence showing those reasons to be pretextual.   Indeed, Plaintiff admits

19  having refused to meet with Barr – the stated reason for his termination.   Docs. 245, 277

20  ¶¶ 142-43.   Ultimately, Plaintiff is left with only the timing of the adverse actions taken

21  after his complaints in November 2009.   But that timing, when considered in light of

22  Defendants' stated reasons and the fact that they took no adverse action against Plaintiff

23  for months after his first complaint, is insufficient to create a triable issue of causation or

24  pretext.

25    In summary, Plaintiff "is unable to produce more than mere allegations of

26  retaliatory or discriminatory motives."   *Munoz*, 630 F.3d at 865.   Nor has he shown a

27  triable issue as to a causal link between protected activity and adverse actions.   The Court

28  will grant summary judgment on the retaliation claims brought under Title VII and

1   § 1981.  Given this ruling, the Court will not consider Defendants' argument that Plaintiff

2   had no reasonable basis to complain of discrimination.  Doc. 244 at 15-17.

3   **IV.    Plaintiff's Papers.**

4          It is important to note that Plaintiff's papers in this case were "extraordinarily

5   difficult to use" and tended to "obfuscate rather than promote an understanding of the

6   facts[.]"  *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996).  Plaintiff presented the

7   Court with nearly 500 separate statements of facts and more than 400 exhibits

8   (Docs. 277, 278), most of which were not cited in his brief (Doc 279).

9          The Court is not obligated to "'scour the record in search of a genuine issue of

10  triable fact.'"  *Keenan*, 91 F.3d at 1279 (citation omitted).  Instead, the Court relies on

11  "'the nonmoving party to identify with reasonable particularity the evidence that

12  precludes summary judgment.'"  *Id.*; *see* Fed. R. Civ. P. 56(e)(2).  "As the Seventh

13  Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles

14  buried in briefs.'"  *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th

15  Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))

16  (alteration omitted).

17         The Court nonetheless has carefully reviewed Plaintiff's papers in search of a

18  triable issue.  Having found none, the Court will grant Defendants' motion for summary

19  judgment.

20         **IT IS ORDERED:**

21         1.    Defendants' motion for summary judgment (Doc. 244) is **granted**.

22         2.    The Clerk is directed to enter judgment accordingly and terminate this case.

23         3.    Consistent with the Court's prior ruling, Plaintiff shall file no motion for

24               reconsideration of this order (Doc. 292).

25         Dated this 4th day of April, 2011.

26

27

28

_____

David G. Campbell
United States District Judge